### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### COVINGTON

**CIVIL ACTION NO. 04-32-DLB**

**JEFFREY CLAIR, ET AL.**                                                                 **PLAINTIFFS**


**vs.**                          **MEMORANDUM OPINION AND ORDER**


**NORTHERN KENTUCKY INDEPENDENT**
**HEALTH DISTRICT, ET AL.**                                               **DEFENDANTS**

**********************************

### I.   INTRODUCTION

Pursuant to 42 U.S.C. § 1983, Plaintiff property owners allege violation of their procedural and substantive due process rights by Defendants' denial of their food service permit application. This matter is presently before the Court upon Defendants' Motion for Summary Judgment (Doc. #34). Plaintiffs filed a Response (Doc. #38) and Defendant filed a Reply (Doc. #41). Therefore, the motion is ripe for the Court's review.

### II.   FACTUAL AND PROCEDURAL BACKGROUND

Jeffrey Clair and Julie Krift (previously Julie Clair) are the sole shareholders and officers of J. Clair Enterprises Inc. (collectively "Plaintiffs"). In May of 2002, Plaintiffs purchased property in Covington, Kentucky with the intent of renovating the existing facility, which was at the time operating as a small tavern, for operation as a full-service restaurant under the name "Pickles." Following Plaintiffs' purchase and renovation of the property in question, an application for a food service permit was submitted in February of 2003 to Defendant, Northern Kentucky Independent Health District (the "Health District"). The

-1-

permit application was denied on grounds that an inspection of the facility's on-site sewage disposal system performed one month earlier by Defendant, Rick Marksberry, a health environmentalist for the Health District, revealed that the septic system did not conform to Kentucky state regulations based on the upgrade of the facility from a tavern seating approximately 27 people to a full-service restaurant seating well over 100 people, and the significant increase in waste volume attendant to such an upgrade.

Upon notification of their permit denial, Plaintiffs made an immediate attempt to appeal the permit decision to the Health District based on their understanding of applicable regulations that appear to "grandfather in" the Plaintiffs' restaurant and on-site sewage disposal system. Unsatisfied with what they believed to be a complete lack of formal appellate procedures for permit denials by the Health District, Plaintiffs subsequently filed suit in the Kenton County Circuit Court ("Circuit Court") in April of 2003 seeking to enjoin the Health District from any inspection of Plaintiffs' on-site sewage disposal system in connection with Plaintiffs' application for a food service permit, as well as damages for the alleged "erroneous and illegal" conduct of the Health District in the initial denial. At the commencement of the action, Plaintiffs also filed a Motion for Temporary Injunction against the Health District.

Simultaneously, correspondence was ongoing between Plaintiffs' counsel and the Health District. There was apparent confusion and disagreement about the applicability of the "grandfather" clause for on-site sewage disposals systems found in K.R.S. § 211.355(3),[1] as referenced by 902 K.A.R. 10:085 (dealing exclusively with on-site sewage

---

[1] K.R.S. § 211.355(3) reads in pertinent part: "Nothing in this section shall authorize or allow the cabinet to inspect any on-site sewage disposal system constructed prior to July 15, 1986,

disposals systems).[2]  The Health District believed that the "grandfather" clause did not apply in the context of a food service permit application, especially when the permit application involved a significant "alteration" or "upgrade" of facilities and waste volumes. Because of the continuing uncertainty, the Health District subsequently contacted the Kentucky Cabinet for Health Services for a legal interpretation of the applicable law. It was the opinion of the Kentucky Cabinet for Health Services that inspection of Plaintiffs' sewage disposal system as a condition of permit approval was appropriate because of the change in facility operation.

In May of 2003, the Circuit Court denied Plaintiffs' Motion for Temporary Injunction. The Circuit Court reasoned that the Health District possessed the statutory and regulatory authority to inspect the disposal system because the operation of the Plaintiffs' new restaurant facility would constitute a substantial change or alteration in the use of the existing on-site waste disposal system.  According to the Circuit Court, this change rendered K.R.S. § 211.355(3) inapposite as only part of the regulatory scheme governing the regulation of on-site sewage disposal systems.

Following the Circuit Court's denial of a temporary injunction, Plaintiffs appealed the ruling to the Kentucky Court of Appeals ("Court of Appeals"). In October of 2003, the Court

---

unless such inspection is deemed necessary due to receipt of a complaint by the cabinet or the local health department."

[2] The enabling statute for the relevant administrative regulations found in 902 K.A.R. 10:085 is K.R.S. § 211.180(1)(d), reading in pertinent part: "The cabinet shall enforce the administrative regulations promulgated by the secretary of the Cabinet for Health and Family Services for the regulation and control of the matters set out below and shall formulate, promote, establish, and execute policies, plans, and programs relating to all matters of public health, including but not limited to the following matters:...The construction, installation, and alteration of any on-site sewage disposal system...."

of Appeals reversed, and issued a temporary injunction enjoining the Health District from enforcing the inspection regulations in connection with the Plaintiffs' food service permit application. The Court of Appeals reasoned that, under basic rules of statutory interpretation, the more specific "grandfather" clause found in K.R.S. § 211.355(3) must be given effect over the more general enabling statute, K.R.S. § 211.180(1)(d), and the relevant administrative regulations found in K.A.R. Title 902, which govern the issuance food of service permits, 902 K.A.R. 45:005, as well as the inspection of on-site sewage disposal systems, 902 K.A.R. 10:085.

Two months later, in December of 2003, Plaintiffs again filed for a food service permit from the Health District and were approved. At that same time, Plaintiffs also filed for and obtained a water permit from the Kentucky Department for Environmental Protection, Division of Water that was necessary for the operation of their restaurant, which subsequently opened on December 15, 2003. The restaurant remained open for only four months, closing on April 12, 2004.

### III.   ANALYSIS

#### A.   Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *See id.* at 324. A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the

nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). If a reasonable jury could not return a verdict for the nonmoving party on the basis of the evidence as construed in its favor, summary judgment should be granted to the movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

Plaintiffs have stipulated that they do not dispute the facts as contained in Defendants' Motion for Summary Judgment and, therefore, both parties acknowledge that there remain no genuine issues of material fact to resolve at trial. Accordingly, even though only Defendant has properly filed a Motion for Summary Judgment under FRCP 56(c), the matter nevertheless appears ripe for summary adjudication, as again acknowledged by both parties.[3]

**B.    Due Process Claims Under 42 U.S.C. § 1983**

Plaintiffs bring claims for violations of both procedural and substantive due process under 42 U.S.C. § 1983. Courts are authorized under § 1983 to "redress violations of 'rights, privileges, or immunities secured by the Constitution and [federal] laws' that occur under color of state law." *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) (quoting 42 U.S.C. § 1983). This provision "creates no substantive rights, but

---

[3] Acknowledging the absence of any issues for trial, Plaintiffs informally requested summary judgment in their favor within their Response to the Defendants' Motion for Summary Judgment (Doc. #38, p. 1). In the Defendants' subsequent Reply Memorandum (Doc. #41, p. 3), Defendants' assert Plaintiffs have improperly moved for summary judgment in violation of FRCP 56(c) and the Court-ordered deadline for dispositive motions in this case. Because the Court concludes Defendants' Motion for Summary Judgment should be granted, Plaintiffs' failure to file their own summary judgment motion is inconsequential.

merely provides remedies for deprivations of rights established elsewhere." *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).

In this case, Plaintiffs assert that Defendants, acting under color of state law, violated their constitutional right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. The clause applies to both substantive and procedural matters. *See Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). However, where an action is brought under 42 U.S.C. § 1983 based upon a deprivation of property, as alleged by Plaintiffs, such action can be predicated upon the Due Process Clause only where the asserted property interest is a constitutionally protected right. *See R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 434-35 (6th Cir. 2005). This is the case whether the plaintiff relies upon procedural due process or substantive due process. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Stevens v. Hunt*, 646 F.2d 1168, 1169-70 (6th Cir. 1981).

## 1.    *Procedural Due Process Claim*

To maintain an action under 42 U.S.C. § 1983 based on a violation of procedural due process, Plaintiffs must show that: (1) their property interest at stake is a protected property right under the Fourteenth Amendment, (2) the deprivation of the interest contravened notions of due process, and (3) state or administrative processes and remedies to redress the alleged violation are inadequate. *See Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004); *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002). Although the analysis lends itself to a three-pronged approach, the

threshold issue is always whether the asserted property interest is a constitutionally protected right. *See R.S.W.W., Inc.*, 397 F.3d at 434-35. If no property right exists, the claim must fail.

The seminal case defining the boundaries of constitutionally protected property rights under the Fourteenth Amendment is the Supreme Court's decision in *Board of Regents of State Colls. v. Roth*, declaring:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. 564, 577 (1972). The application of *Roth* throughout the case law has resulted in the development of a crucial distinction in determining whether a property right exists. This distinction asks whether the alleged deprivation was of a property interest already held, where possessory deprivation offends the Fourteenth Amendment to a much greater extent based on theories of reliance upon a security interest. *See Roth*, 408 U.S. at 576 ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits."). The hurdle becomes significantly higher in cases, such as the present matter, where the complainant had not yet acquired the property interest at the time of alleged deprivation.

Because Plaintiffs were first-time applicants for the food service permit at the time of the initial denial, they were not deprived of a property interest already held. Therefore, Plaintiffs must show that they had a legitimate claim of entitlement to the permit, not a mere

-7-

expectation. In approaching this question, courts often look to whether the issuance of the permit involved a significant degree of discretion to the extent that a claim of entitlement would not be legitimate. *See R.S.W.W., Inc.*, 397 F.3d at 435; *Bayview-Lofberg's, Inc. v. City of Milwaukee*, 710 F. Supp. 1267, 1268-69 (E.D. Wisc. 1989). Under the present circumstances, Plaintiffs claim that because K.R.S. § 211.355(3) appears to strip the Health District's authority to inspect on-site sewage disposal systems "constructed prior to July 15, 1986," they were legitimately entitled to the food service permit since the inspection could not be a legal condition precedent for issuance.

However, nothing in the record suggests that Plaintiffs were guaranteed the permit had inspection of the waste disposal system been disallowed. Even the Health District's eventual approval of Plaintiffs' permit application following the injunction issued by the Kentucky Court of Appeals does not alter the reality that the Health District retains a significant degree of discretion in issuing food service permits. The discretionary nature of the food service permit application process is readily apparent in light of the regulatory scheme in place.[4] *See* 902 K.A.R. 45:005.3(4). The permit issuance regulation for food service establishments reads:

> Prior to approval of an application for permit, the cabinet shall:
>     (a) Inspect the proposed food service establishment to determine compliance with the provisions of this administrative regulation; and
>     (b) Issue a permit to the applicant if the inspection reveals that the proposed food service establishment complies with the requirements of this administrative regulation.

902 K.A.R. 45:005.3(4). Although the issuance regulation itself appears simplistic and

---

[4] Notably, both parties failed to address or even cite directly the administrative regulation for issuance of food service permits found in 902 K.A.R. 45:005.

without any bona fide discretion, the complexity and sheer length of the administrative regulations under which an applicant must be in compliance to obtain the permit is substantial. *See* 902 K.A.R. 45:005. More importantly, with each section of the applicable regulations comes almost unfettered discretion on the part of the inspecting health officials to determine whether or not the applicant is in compliance. Accordingly, while Plaintiffs may have an expectation of receiving the food service permit if the relevant facilities are in compliance, Plaintiffs did not at any point prior to their actual receipt of the permit possess a legitimate claim of entitlement to the food service permit.

Furthermore, food service permits are analogous and analytically indistinguishable from other types of property-use permits, such as liquor and entertainment licenses. As such, Circuit precedent "has held that first-time applicants for liquor or entertainment licenses do not have a protected property interest" for purposes of due process analysis. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). New applicants for these types of permits or licenses do "not have a property interest so as to entitle them to procedural or substantive due process rights in the same way that an existing permit holder might demand." *Wojcik v. City of Romulus*, 257 F.3d 600, 610 (6th Cir. 2001). Although this case involves an application for a food service permit rather than a liquor or entertainment permit, the Court finds the Sixth Circuit case law governing these types of licenses persuasive. As such, Plaintiffs were not entitled to a permit and thus suffered no constitutional injury upon its deprivation. *See Sanderson v. Village of Greenhills*, 726 F.2d 284, 286 (6th Cir. 1984) (holding that a first-time applicant for an amusement license did not have a legitimate claim of entitlement to the license because the circumstances were analogous to other license/permit decisions holding the same).

Finally, although analysis under the third prong for procedural due process claims–the adequacy of state post-deprivation procedures for redress–is rendered unnecessary due to a lack of a protected property right in the food service permit,[5] the Court nevertheless finds that adequate post-deprivation procedures were in place via the state courts. Assuming *arguendo* that the Health District's actions in denying Plaintiffs' application for the food service permit constituted a deprivation of a constitutionally protected property right, and that the procedures surrounding the deprivation contravened notions of due process, Plaintiffs' must still prove that state processes for redress are inadequate. *See Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983), cert denied, 469 U.S. 834 (1984) ("In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong."); *Jefferson*, 360 F.3d at 588 ("Plaintiff may not seek relief under *Section 1983* without first pleading and proving the inadequacy of *state or administrative processes or remedies* to redress her due process violations.") (second emphasis added).

Specifically, to maintain an action under 42 U.S.C. § 1983 based on a violation of procedural due process, Plaintiffs must show that: "(1) the state does not provide any remedy; (2) the state provides a remedy, but it is inadequate; or (3) the state provides an adequate remedy in form, both procedurally and in damages, but the state failed to apply or misapplied the remedy." *Gardner v. Village of Grand River*, 955 F. Supp. 817, 824 (N.D. Ohio 1997) (citing *Haag v. Cuyahoga County*, 619 F. Supp. 262 (1985), aff'd without

---

[5] Likewise, analysis under the second prong–whether the deprivation of the property right contravened notions of due process–is also unnecessary given the absence of any constitutionally protected property right. However, the lack of any formal procedures within the Health District for challenging an initial permit decision is troubling.

opinion, 798 F.2d 1414 (6th Cir. 1986)). This showing does not require Plaintiffs to have utilized or exhausted the processes if they indeed exist, but rather Plaintiffs must show only that there are no such processes in place. Plaintiffs have failed to make this showing.

Plaintiffs may ultimately be correct in their assertion that administrative post-deprivation procedures through the Health District were lacking in this case, but in doing so, Plaintiffs ignore other non-administrative channels for redress. The lack of an administrative post-deprivation hearing does not constitute a due process violation where an adequate state judicial process exists. *See Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991). Plaintiffs clearly had available to them, and subsequently exercised successfully, an adequate avenue for post-deprivation processes: state court. Following the refusal by the Kenton County Circuit Court to temporarily enjoin the Health District, the Kentucky Court of Appeals issued a temporary injunction requiring the Health District to issue the permit without regard for Plaintiffs on-site sewage disposal systems. Irrespective of whether Plaintiffs proved successful in their state court action,[6] the very fact that their claims were heard under applicable state law constitutes the receipt of adequate state post-deprivation processes and procedural due process; evidence of their eventual success in state court only reinforces this conclusion.[7]

---

[6] Although unnecessary for the procedural due process analysis, the totality of Plaintiffs' state court litigation efforts is further evidence that adequate post-deprivation procedures existed in this case, regardless of how lacking the administrative procedures may have proved.

[7] Plaintiffs attempt to distinguish between redress for the alleged substantive wrong and damages that may have resulted from the permit denial. Some courts have held that the adequacy of state processes for redress include both procedures to remedy the substantive wrong as well as procedures to recover damages. *See, e.g.*, *Gardner*, 955 F. Supp. at 824 ("[P]laintiff has the burden of proving the inadequacy of state processes, including state damage remedies, to redress the claimed wrong."). Nevertheless, Plaintiffs did file suit in state court to enjoin the Health District *and* to recover damages for the alleged wrongful permit denial in their original state court action. But

Accordingly, Plaintiffs' claim for violation of procedural due process pursuant to 42 U.S.C. § 1983 fails because the food service permit was not a constitutionally protected property right to which Plaintiffs had a legitimate claim of entitlement, and adequate state processes for post-deprivation redress were available through the state courts.

### 2.   *Substantive Due Process Claim*

Plaintiffs also contend that the actions of the Health District, and the individual employees thereof, constitute a violation of Plaintiffs' substantive due process rights. However, an action under 42 U.S.C. § 1983 can be predicated upon the Due Process Clause only where the asserted property interest is a constitutionally protected property right, and this is the case regardless of whether the underlying claim is for procedural or substantive due process violations. *See R.S.W.W., Inc.*, 397 F.3d at 434-35; *Stevens*, 646 F.2d at 1169-70. Accordingly, Plaintiffs' claim again fails as a threshold matter because Plaintiffs did not have a "legitimate claim of entitlement" to the food service permit and the permit is therefore not a constitutionally protected property right.[8] *Roth*, 408 U.S. at 577. Nevertheless, Plaintiffs' claim also fails under the following traditional substantive due process analysis.

Substantive due process has been defined as "the doctrine that governmental deprivations of life, liberty, or property are subject to limitations regardless of the adequacy

---

after proving victorious in their motion for a temporary injunction in the Court of Appeals, Plaintiffs failed to further pursue their original action for damages in the trial court. The record is unclear as to the reason for Plaintiffs' decision to abandon their state court litigation.

[8] Although Plaintiffs' procedural due process claim failed for both a lack of a protected property right and the existence of adequate state processes for redress, only the property right analysis applies with the same force to a claim for violation of substantive due process. In other words, the state processes in place to remedy an alleged violation under 42 U.S.C. § 1983 are irrelevant in *substantive* due process claims. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

of the procedures employed." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992) (internal citations omitted). In the context of § 1983 actions, claims for violation of substantive due process typically fall under two categories: "(1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997). In their allegations of substantive due process violations, Plaintiffs have vaguely asserted the denial of a constitutional guarantee, but this claim cannot prevail because, as established in the prior analysis, Plaintiffs did not have a constitutionally protected right to the food service permit. Additionally, the first category of substantive due process claims does not traditionally include those claims premised upon procedural rights under the Fourteenth Amendment.[9]

Plaintiffs' remaining substantive due process claim, falling into the second category, asserts that the health officials' erroneous application of the law and the Health District's lack of any formal procedures for an aggrieved citizen to challenge an allegedly wrongful permit denial is so egregious as to shock the conscience. Although the Health District officials may have ultimately navigated the web of state law in this case incorrectly, they did so in the good faith fulfillment of their duties and responsibilities as public health officials. Instead of simply assuming that the "grandfather" clause of K.R.S. § 211.355(3)

---

[9] In *Lillard v. Shelby County Bd. of Educ.*, the court more clearly explained the two types of substantive due process claims:

This court has recognized two categories of substantive due process rights:

The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute *other than procedural claims under "the Fourteenth Amendment simpliciter."*

The other type of claim is whether the conduct complained of "shocks the conscience" of the court.

76 F.3d 716, 724 (6th Cir. 1996) (emphasis added).

applied universally to all matters involving on-site sewage disposal systems, which was unclear at the time and remains so, the employees took action based on the significant alteration of the restaurant facilities in question. Rather than waiting for problems or complaints to trigger an inspection as seemingly dictated by the "grandfather" statute, the Health District took a proactive approach which they believed was appropriate under the circumstances to protect the public health.

Plaintiffs cite to a decision outside the jurisdiction of this Court in an attempt to articulate what they believe the appropriate standard is to which the Health District should be held: "Non-legislative state action violates substantive due process if 'arbitrary, irrational, or tainted by improper motive' or if 'so egregious that it 'shocks the conscience.'" *County Concrete Corp. v. Township of Roxbury*, 442 F.3d 159, 169 (3rd Cir. 2006) (quoting *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3rd Cir. 2000)). The conduct on the part of the Health District in this case was hardly arbitrary or irrational (and no improper motive has ever been alleged), and certainly fails to shock the conscience of this Court;[10] whereas the failure to take action on the part of the Health District may have proved more persuasive and even more troubling. Furthermore, although the lack of appellate protocol within the Health District for permit applications is unfortunate, it does not shock the conscience, especially considering the alternative avenues for redress that were available to Plaintiffs in state court.

Accordingly, Plaintiffs claim for violation of substantive due process pursuant to 42

---

[10] The fact that the state trial court initially agreed with the Health District in their interpretation of the statutory and regulatory scheme at work in denying the motion for temporary injunction further evidences the reasonableness of the actions on the part of the health officials.

U.S.C. § 1983 fails because the food service permit was not a constitutionally protected right to which Plaintiffs had a legitimate claim of entitlement, and the actions of the Health District in their discretionary capacity to protect the public health did not rise to the level of shocking the conscience.

**C.**     **Claims Against Health District Employees**

Under the preceding analysis, claims against the individual employees of the Health District for violations of due process, both procedural and substantive, pursuant to 42 U.S.C. § 1983, must fail because there was not a protected property right at stake. Additionally, adequate post-deprivation procedures were in place through the state judicial process, rendering Plaintiffs' claims against the Health District employees without merit.

Furthermore, the health officials are protected by qualified immunity for conduct in their official capacity pertaining to the denial of Plaintiffs' application for the food service permit. "The doctrine of qualified immunity generally shields state actors from liability under § 1983 based on their discretionary acts." *Thomas*, 304 F.3d at 568. Qualified immunity is not simply a defense to liability, but complete immunity from suit. *See Crockett v. Cumberland Coll.*, 316 F.3d 571, 579 (6th Cir. 2003). However, immunity in this context is "qualified" because "government actors my lose this immunity when they violate clearly established constitutional rights which a reasonable person should have known." *Thomas*, 304 F.3d at 568-69. "Plaintiffs bear the burden of defeating this immunity, which is a legal issue to be decided by the court." *Id.* at 569.

The personal liability of the health officials in this case therefore turns on the "objective legal reasonableness" of their actions in denying Plaintiffs' application for the food service permit based on inspection of the on-site sewage disposal system. As further

explained by the Supreme Court in *Anderson v. Creighton*:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

483 U.S. 635, 640 (1987). Despite the ruling by the Kentucky Court of Appeals in Plaintiffs favor, the state trial court's initial determination that the actions of the Health District were supported by applicable state law demonstrates the uncertainty that surrounded the appropriate legal application of the health regulations. The alleged unlawfulness of the health officials' actions, therefore, was not readily apparent at the time of permit denial. At the very least, it is objectively clear that a reasonable official would not have known that what the health officials did in this case violated Kentucky law.

Accordingly, Plaintiffs' claims against Defendant health officials fail under the same due process analysis employed for the claims against the Health District, and Defendant health officials are also entitled to qualified immunity for their discretionary and reasonable actions in connection with the denial of Plaintiffs' food service permit application.

## IV.   CONCLUSION

In accordance with the foregoing analysis,

**IT IS ORDERED** that:

(1)    Defendants' Motion for Summary Judgment (Doc. # 34) be, and hereby is,

**GRANTED**;

(2)     Plaintiffs' Complaint be, and hereby is, **DISMISSED WITH PREJUDICE** and

      **STRICKEN** from the active docket of this Court; and

(3)     A Judgment in favor of Defendant will be entered concurrently herewith.

This 19th day of September, 2006.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\2-04-32-Clair (MOO).wpd

-17-